(No. 97430.—

*In re* MARRIAGE OF EARL M. SCHNEIDER, Appellant, and JODI ANN SCHNEIDER, Appellee.

*Opinion filed January 21, 2005.*

154

Rosenfeld, Hafron, Shapiro & Farmer, of Chicago (Joel S. Ostrow and Brian Hurst, of counsel), for appellant.

Marshal P. Morris, of Park Ridge, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

Appellant, Earl Schneider, filed a petition in the circuit court of Lake County seeking the dissolution of his marriage to appellee, Jodi Ann Schneider. The circuit court entered a judgment for dissolution of marriage incorporating its findings and decisions. Among the contested issues at trial was the value of Earl's dental practice. In valuing Earl's dental practice, the circuit court excluded personal goodwill and accounts receivable from the fair market value of the practice. The circuit court also allocated 67% of the marital assets to Jodi, noting the duration of the marriage, the reasonable opportunity of each spouse for the future acquisition of capital assets and income, and that the apportionment of assets was in lieu of maintenance. The circuit court also determined that each party would be responsible for his or her own attorney fees.

The appellate court affirmed the circuit court in part and reversed in part. 343 Ill. App. 3d 628. The appellate court affirmed the circuit court's holding that each party should be responsible for his or her own attorney fees. However, the appellate court held that personal goodwill and accounts receivable should have been included in the

valuation of Earl's dental practice. The appellate court therefore reversed the circuit court's valuation of the dental practice and remanded for a redistribution including those assets. This court then allowed Earl's petition for leave to appeal the appellate court's holding that personal goodwill and accounts receivable should have been included in the valuation of the dental practice. 177 Ill. 2d R. 315.

## BACKGROUND

Earl and Jodi were married in August 1985. The parties had three children during their marriage: Ashley, born in 1986; Justin, born in 1989; and Jordan, born in 1991. Earl filed a petition for dissolution of marriage on September 15, 2000. Prior to trial on the petition for dissolution, the parties stipulated that Earl's gross income as a self-employed dentist was $325,000, with a net income of $195,000. In addition, each party waived maintenance, although Jodi later indicated that she had reserved the right to seek a disproportionate share of the assets in light of her waiver of maintenance. Child support was set at $5,400 a month until Ashley attained majority or graduated high school. Thereafter, child support was set at $4,062.25 until Justin attained majority or graduated high school. Child support then was reduced to $3,250 per month until Jordan attained majority or graduated high school. The tax exemptions for the children were allocated to Earl, and Earl agreed to pay the children's health insurance. Jodi was awarded sole custody of the children.

At trial, Jodi testified that she graduated from college in 1981 with a B.S. in accounting. She became a CPA in 1983. After graduating, Jodi began working full time as a staff accountant for Warady and Davis. Jodi was promoted to supervisor when she was pregnant with Ashley. Jodi continued to work full time until Ashley was born in 1986. Over Earl's objections, Jodi then worked

part-time until Justin was born. After Justin was born, Jodi stopped working at Warady and Davis pursuant to Earl's request, although she continued to do bookkeeping and payroll taxes for one client, working approximately four hours every three months. In addition, Jodi did the receivables, accounting, payables, bills and insurance for Earl's dental practice from the time he graduated from dental school until approximately the summer of 2000. Jodi testified that had she continued to work full time for Warady and Davis, she would have been promoted to manager and then to partner. Managers earn from $75,000 to $100,000 a year, while partners earn more than $100,000 a year.

Jodi went back to work part-time for Warady and Davis in September 1998, when her youngest child began school. She currently has three clients. Jodi earned a gross income of $4,385.25 in 2000. From January through October 2001, Jodi had grossed approximately $5,800. Jodi testified that she earns $30 an hour at Warady and Davis.

Earl testified that on March 24, 1987, he entered into an employment agreement with Jack E. Taub, D.D.S., Ltd., an Illinois professional corporation. Pursuant to the employment agreement, Earl was to receive a monthly salary equal to 40% of the net collections of his monthly billings. On August 24, 1987, Earl entered into a second employment agreement with Jack E. Taub, D.D.S., Ltd., which provided for a monthly draw of $4,000 through January 31, 1988, and on a year-to-year basis thereafter, provided Earl had purchased certain shares of Jack E. Taub, D.D.S., Ltd. Also on August 24, 1987, Earl entered into a stock purchase and redemption agreement with Dr. Taub and Jack E. Taub, D.D.S., Ltd. Earl testified that he purchased the dental practice from Dr. Taub in 1987 for $350,000, although agreed interest payments brought the total cost to $550,000. Dr. Taub agreed to

stay at the practice for 30 months, and also agreed to a five-mile radius noncompete provision. Earl testified that he did not lose any of Dr. Taub's patients following the transition, and that the practice's current gross income was approximately $800,000 a year. Jodi claimed that the total purchase price for the business was $650,000.

As noted, at trial on the petition for dissolution, the parties contested the valuation of Earl's dental practice and the allocation of marital property. Earl's expert witness, Stephen Mareta, testified that the fair market value of the dental practice was $346,300. Of this amount, Mareta attributed $311,300 to personal goodwill and $35,000 to fixed assets. The fixed assets included property and equipment, but did not include cash on hand, accounts receivable, cash surrender value of life insurance, and loans due from officers. Mareta testified that the accounts receivable were merely a reflection of future income.

Jodi's expert witness, Bruce Richman, testified that the fair market value of the dental practice was $481,000. Richman attributed $144,413 to tangible assets, including accounts receivable, furniture and equipment, cash surrender value of insurance, and inventory. Richman attributed the remaining $336,587 to intangible assets, although Richman stated that those intangible assets did not include personal goodwill. Richman described the intangible assets as including dental records, the leasehold interest, a trained workforce, intellectual property, trade names and enterprise goodwill.

On January 23, 2002, the circuit court entered its findings and decision. The circuit court valued Earl's dental practice at $38,300. This amount included $8,000 in inventory and $30,300 in furniture and equipment. The circuit court did not include accounts receivable, cash on hand, cash surrender value of life insurance, and loans due from officers in the valuation, accepting Earl's

argument that including those items in the valuation would result in a double counting of those assets. In addition, the circuit court held that any goodwill that existed in the practice was personal goodwill that should not be included in determining the fair market value of the dental practice. The circuit court stated that Jodi's expert witness had failed to establish the existence of any enterprise goodwill in the practice.

The circuit court next addressed each party's request for contribution toward attorney fees. The circuit court noted that both parties had been extremely litigious and "quarrelsome" during the entire process, and that each had been unreasonable from time to time, resulting in an unnecessarily expensive divorce. The circuit court held that legal fees would not be based upon the misconduct or litigiousness of the other party because both parties were equally guilty of such conduct. The circuit court then considered the factors set forth in section 503 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/503 (West 2000)), as well as the allocation of marital property and debt, and held that each party should be responsible for his or her own legal fees and costs.

The circuit court then allocated 67% of the marital assets to Jodi and 33% to Earl, for an approximate distribution of $326,000 to Jodi and $161,000 to Earl. The circuit court stated that in determining the allocation of marital assets, it found that the following factors weighed heavily in favor of a disproportionate allocation: the duration of the marriage (750 ILCS 5/503(d)(4) (West 2000)); whether the apportionment of assets was in lieu of or in addition to maintenance (750 ILCS 5/503(d)(10) (West 2000)); and the reasonable opportunity of each spouse for future acquisition of capital assets and income (750 ILCS 5/503(d)(11) (West 2000)). The circuit court then entered a judgment for dissolution of marriage on

March 4, 2002, incorporating its findings and decision. The circuit court subsequently denied Earl's motion for reconsideration.

Earl then appealed the circuit court's judgment and Jodi filed a cross-appeal. Earl later filed a motion to dismiss his appeal, so that only Jodi's cross-appeal remained pending. Relevant to the instant case, Jodi argued on appeal that the circuit court had erred in its valuation of Earl's dental practice and thus in its ultimate distribution of the marital property. Jodi argued that the circuit court should have included goodwill, accounts receivable, loans due from officers, cash surrender value of insurance policies, and cash on hand in its valuation of the dental practice. Jodi also argued that the circuit court should have ordered Earl to contribute to her attorney fees.

The appellate court, with one justice dissenting, reversed the circuit court in part. 343 Ill. App. 3d 628. The appellate court found that the circuit court erred in excluding personal goodwill from the valuation of Earl's dental practice. 343 Ill. App. 3d at 636. The appellate court acknowledged that this court, in *In re Marriage of Zells*, 143 Ill. 2d 251 (1991), held that personal goodwill is not to be considered a divisible marital asset. 343 Ill. App. 3d at 635. The appellate court concluded, however, that if goodwill is not considered as part of a spouse's income-generating ability relative to a maintenance award, it may be considered in the valuation of a professional practice as a divisible marital asset. 343 Ill. App. 3d at 636. In addition, the appellate court held that accounts receivable are business assets and should have been included in the valuation of the dental practice. 343 Ill. App. 3d at 637. Likewise, the appellate court found that the circuit court erred in not including the cash on hand, cash surrender value of insurance policies and loans due from officers in determining the fair market

value of the dental practice. 343 Ill. App. 3d at 637. The appellate court therefore reversed the circuit court's property distribution and remanded to the circuit court for a redistribution including the items of marital property that were erroneously omitted from the original judgment for dissolution. 343 Ill. App. 3d at 637. Finally, the appellate court held that the circuit court did not abuse its discretion in determining that Jodi was able to pay her own attorney fees. 343 Ill. App. 3d at 638.

Justice Bowman, dissenting, disagreed with the majority's conclusion that the circuit court erred in not including personal goodwill in the valuation of Earl's dental practice. 343 Ill. App. 3d at 638 (Bowman, J., dissenting). Justice Bowman stated that the majority's holding was contrary to the language expressed by this court in *Zells*. 343 Ill. App. 3d at 638 (Bowman, J., dissenting). Justice Bowman noted that the circuit court considered both Jodi's waiver of maintenance and the future income generating ability of each party in awarding Jodi a disproportionate share of the marital assets. 343 Ill. App. 3d at 639 (Bowman, J., dissenting). In addition, the circuit court based its child support award on Earl's income from his dental practice. 343 Ill. App. 3d at 639 (Bowman, J., dissenting). Justice Bowman concluded that, because the personal goodwill of Earl's dental practice was reflected in the child support award, any additional consideration of goodwill in the valuation of his dental practice would be duplicative and improper. 343 Ill. App. 3d at 639 (Bowman, J., dissenting), quoting *Zells*, 143 Ill. 2d at 256.

Earl then petitioned this court for leave to appeal from the appellate court's holding that goodwill and accounts receivable should have been included in the valuation of his dental practice. This court allowed Earl's petition for leave to appeal. 177 Ill. 2d R. 315. Jodi cross-appealed, again challenging the circuit court's failure to

order Earl to pay her costs and attorney fees. Jodi also argues on cross-appeal that if this court finds that goodwill and accounts receivable were properly excluded from the valuation of Earl's dental practice, this court should remand to the circuit court for a reconsideration of Jodi's waiver of maintenance.

## ANALYSIS

As noted, Earl first argues that the appellate court erred in including the personal goodwill of his dental practice as an element of valuation. Generally, the valuation of assets in an action for dissolution of marriage is a question of fact, and the circuit court's determination will not be disturbed absent an abuse of discretion. *In re Marriage of Stone*, 155 Ill. App. 3d 62, 70 (1987). However, the issue in this case—whether personal goodwill must be considered a divisible marital asset when spousal maintenance is not awarded—presents an issue of law and not a question of fact. Accordingly, this court reviews the issue *de novo*. See *In re Marriage of Crook*, 211 Ill. 2d 437, 442 (2004).

In support of his claim that the appellate court erred in considering personal goodwill in valuing his dental practice, Earl contends that the appellate court majority misinterpreted this court's decision in *In re Marriage of Zells*, 143 Ill. 2d 251 (1991). At issue in *Zells* was the division and distribution of marital property between a lawyer and his spouse. *Zells*, 143 Ill. 2d at 252. The circuit court and the appellate court had found that the goodwill in the husband's law practice was a marital asset subject to division and distribution. *Zells*, 143 Ill. 2d at 252. In addressing the issue, this court noted that the appellate court districts were divided on the issue of whether personal goodwill should be considered in valuing a professional practice. *Zells*, 143 Ill. 2d at 254-55. For example, the Fifth District, in *In re Marriage of White*, 98 Ill. App. 3d 380, 384 (1981), had held that

goodwill was a factor to be considered in valuing a professional corporation. The *White* court had noted that "despite the intangible quality of good will in a professional practice, it is of value to the practicing spouse both during and after the marriage and its value is manifested in the amount of business and, consequently, in the income which the spouse generates." *White*, 98 Ill. App. 3d at 384.

In contrast, the First District had taken the position that the goodwill of a professional business was not marital property subject to division. *In re Marriage of Wilder*, 122 Ill. App. 3d 338 (1983). The *Wilder* court declined to follow the reasoning of the Fifth District in *White*, finding that the *White* court's definition of goodwill was reflected in three of the factors that the trial court must consider in apportioning marital property under section 503(d) of the Dissolution Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(d), now 750 ILCS 5/503(d) (West 2000)), including the ability to generate income. *Wilder*, 122 Ill. App. 3d at 347.

Subsequently, the Third District elected to follow *Wilder* rather than *White*. *In re Marriage of Courtright*, 155 Ill. App. 3d 55 (1987). The appellate court in *Courtright* stated that:

> "Although many businesses possess this intangible known as good will, the concept is unique in professional business. The concept of professional good will is the sole asset of the professional. If good will is that aspect of a business which maintains the clientele, then the good will in a professional business is the skill, the expertise, and the reputation of the professional. It is these qualities which would keep patients returning to a doctor and which would make those patients refer others to him. The bottom line is that this is reflected in the doctor's income-generating ability." *Courtright*, 155 Ill. App. 3d at 58.

The court in *Courtright* concluded that, although goodwill had not been considered in the trial court's valuation of the husband's business itself, goodwill was a fac-

tor in examining the husband's income potential. *Courtright*, 155 Ill. App. 3d at 59. The court held that "[t]o figure good will in both facets of the practice would be to double count and reach an erroneous valuation." *Courtright*, 155 Ill. App. 3d at 59.

Upon review of the appellate court decisions, this court in *Zells* agreed with the reasoning of the court in *Courtright*. *Zells*, 143 Ill. 2d at 256. We held that:

> "Adequate attention to the relevant factors in the Dissolution Act results in an appropriate consideration of professional goodwill as an aspect of income potential. The goodwill value is then reflected in the maintenance and support awards. Any additional consideration of goodwill value is duplicative and improper." *Zells*, 143 Ill. 2d at 256.

We stated that "[g]oodwill represents merely the ability to acquire future income. Consideration of goodwill as a divisible marital asset results in gross inequity." *Zells*, 143 Ill. 2d at 254.

In this case, in addressing our decision in *Zells*, the appellate court majority focused on the statement that "goodwill value is then reflected in the maintenance and support awards." The appellate court majority interpreted *Zells* as holding that "personal goodwill, *if used as a factor in calculating income potential, on which the maintenance and support awards are based*, cannot also be used as a divisible marital asset." (Emphasis added.) 343 Ill. App. 3d at 635. The majority therefore concluded that "if goodwill is not considered as part of a spouse's income-generating ability relative to a maintenance award, it may be considered in the valuation of a professional practice as a divisible marital asset." 343 Ill. App. 3d at 636. The majority also rejected the dissent's assertion that personal goodwill was reflected in the child support award. 343 Ill. App. 3d at 636. The majority interpreted *Zells* as providing that personal goodwill must be reflected in both the maintenance *and* support awards. 343 Ill. App. 3d at 636. Thus, if personal goodwill

was reflected only in the award of child support, the exclusion of goodwill from the valuation of the dental practice would result in an unfair and unjust distribution of marital property. 343 Ill. App. 3d at 636. Consequently, the court concluded that, because Jodi had waived maintenance, personal goodwill should have been included when valuing Earl's dental practice.

Earl disputes the appellate court's application of *Zells*. Earl maintains that *Zells* held that only one of the allowances predicated on future income, maintenance or support, was necessary for a double count of goodwill to exist if goodwill is also used to value an asset. Earl additionally observes that the majority did not address this court's decision in *In re Marriage of Talty*, 166 Ill. 2d 232 (1995). *Talty* held that an impermissible double count takes place if professional goodwill is used first to give the other spouse a disproportionate share of the assets and then is used in valuing the business. *Talty*, 166 Ill. 2d at 238-39. Earl argues that because Jodi sought and received a disproportionate share of the marital assets, an impermissible double counting would take place if Earl's professional goodwill is considered in valuing his dental practice.

Upon review, we agree with Earl that the appellate court majority misinterpreted our decision in *Zells*. Section 503(d) of the Dissolution Act sets forth relevant factors to be considered in dividing marital property in just proportions. These factors include:

> "(5) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;
>
> * * *
>
> (8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

***

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income[.]" 750 ILCS 5/503(d)(5), (d)(8), (d)(10), (d)(11) (West 2000).

In *Zells* we noted that adequate attention to the preceding factors would result in an appropriate consideration of professional goodwill as an aspect of income potential that would then be reflected in the maintenance and support awards. *Zells*, 143 Ill. 2d at 256. We therefore held that any additional consideration of goodwill value is duplicative and improper. *Zells*, 143 Ill. 2d at 256. However, as this court made clear in *Talty*, the basis for our holding in *Zells* was not simply the fact that maintenance and support were awarded. Rather, the basis for our holding in *Zells* was the fact that personal goodwill "is already reflected in a number of the circumstances that must be considered by a judge in making an equitable division of property under the [Dissolution] Act." *Talty*, 166 Ill. 2d at 237. Specifically we stated:

" 'A workable definition of goodwill is that "goodwill is the value of a business or practice that exceeds the combined value of the physical assets." (2 Valuation and Distribution of Marital Property, sec. 23.04[1] (M. Bender ed. 1984).).' (*In re Marriage of White* (1986), 151 Ill. App. 3d 778, 780.) 'Goodwill represents merely the ability to acquire future income.' (*Zells*, 143 Ill. 2d at 254.) To the extent that the goodwill of the car dealership depends on [the husband's] personal efforts, the same elements that underlie that calculation were also considered by the court in its assessment of the criteria contained in section 503(d)." *Talty*, 166 Ill. 2d at 238.

Notably, in *Talty*, although no award of maintenance or child support was made, this court nonetheless held that personal goodwill should not be considered an asset of the business because the elements that constitute personal goodwill are considered under section 503(d) of

the Dissolution Act in dividing marital property. *Talty*, 166 Ill. 2d at 240.

In this case, as in *Talty*, the personal goodwill in Earl's dental practice was considered by the circuit court in assessing the criteria in section 503(d) and in deciding to award Jodi a disproportionate share of the marital assets. Any further consideration of that goodwill in valuing Earl's dental practice would amount to an impermissible double counting. Accordingly, we find that the appellate court erred in holding that personal goodwill should have been included in the valuation of Earl's dental practice.

Notwithstanding this court's decisions in *Zells* and *Talty*, Jodi argued in her brief and at oral argument that this court should follow the approach taken by the appellate court in *In re Marriage of Grunsten*, 304 Ill. App. 3d 12 (1999), in valuing Earl's dental practice. *Grunsten* held that, in valuing a closely held corporation, it was proper to consider the price paid for the corporation four years earlier, as well as the increase in gross revenues since the corporation was purchased. *Grunsten*, 304 Ill. App. 3d at 18. Jodi argues that this court should look to the price that Earl paid Dr. Taub for his dental practice, as well as at the increase in revenues since Earl purchased the practice in order to determine a fair market value for the practice.

We decline to adopt the approach set forth in *Grunsten* for purposes of the valuation in this case. The issue of goodwill in valuing the corporation was not addressed by the court in *Grunsten*. Moreover, the corporation in *Grunsten* was a closely held corporation, while Earl's dental practice is a professional corporation. The goodwill in a professional practice is generally personal in nature, while the goodwill in a corporation might include both personal and enterprise goodwill. *Talty*, 166 Ill. 2d at 239. As we recognized in *Talty*, the duplication of the fac-

tors set forth in section 503(d) of the Act is limited to personal goodwill and does not extend to enterprise goodwill. *Talty*, 166 Ill. 2d at 239-40. Because the court in *Grunsten* did not address the issue of goodwill, let alone whether any enterprise or personal goodwill existed in the corporation, we find that *Grunsten* is inapposite.

Earl next argues that the appellate court erred in remanding this cause to the circuit court with directions to consider accounts receivable in distributing the marital estate.[1] Earl concedes that courts have classified accounts receivable as assets, but argues that no court has considered the issue of double counting with regard to accounts receivable. Earl contends that the accounts receivable are analogous to goodwill. Earl argues that accounts receivable are income from which child support payments are made, so that if accounts receivable are considered in valuing the dental practice, the same money is being paid upon twice. Jodi responds that goodwill and accounts receivable are distinguishable. Goodwill is an intangible asset, while accounts receivable are tangible, or fixed, assets and may be considered in valuing Earl's dental practice.

Because the issue of whether accounts receivable are properly included in valuing a professional corporation presents an issue of law, our review is *de novo*. See *In re Marriage of Crook*, 211 Ill. 2d 437, 442 (2004). Although this court has not considered the issue, our appellate court has addressed whether accounts receivable should be considered in valuing a professional practice. In *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 973 (1992), the respondent husband argued that the trial court erred in valuing his law practice by taking into consideration accounts receivable. Relying on this court's decision in

---

[1]Earl does not challenge the appellate court's finding that cash on hand, the cash surrender value of life insurance, and loans due from officers should be added to the value of the corporation.

*Zells*, the respondent argued that accounts receivable, like goodwill and contingent fees, were part of his future earnings and were accounted for in his projected income, so that it would be duplicative to also consider the accounts receivable as a separate asset in valuing respondent's law practice. *Tietz*, 238 Ill. App. 3d at 975. The respondent maintained that the accounts receivable should not be viewed as marital property subject to distribution, but instead should be used in determining income for purposes of support and maintenance. *Tietz*, 238 Ill. App. 3d at 975.

The appellate court held that *Zells* did not apply to accounts receivable. *Tietz*, 238 Ill. App. 3d at 976. The court in *Tietz* noted that, in addition to goodwill, *Zells* had also considered whether a lawyer's contingent fee contracts are subject to valuation, division and distribution as part of the marital estate. *Zells* held that the proper context for the consideration of fees, contingent or otherwise, was in the determination of income for support and maintenance, so that future earned fees could be considered if the subject of maintenance was revisted. *Zells*, 143 Ill. 2d at 253. The court in *Tietz* then concluded that:

> "Clearly, future earned fees, like contingent fees, are not marital assets because their value is too speculative and because they are fees earned in the future. Accounts receivable, however, are distinguishable because they are assets already earned with a known value but have not yet been collected." *Tietz*, 238 Ill. App. 3d at 977.

The appellate court held that it was not error for the trial court to value the law partnership by viewing the tangible assets, including accounts receivable. *Tietz*, 238 Ill. App. 3d at 977. The court stated that "[a]ccounts receivable are only 'future income' in the sense they will be collected in the future. The distinction is these fees have already been earned and have a known value." *Tietz*, 238 Ill. App. 3d at 977.

Subsequent appellate court decisions have also rejected the claim that considering accounts receivable in valuing a business results in a double recovery. See *In re Marriage of Steinberg*, 299 Ill. App. 3d 603 (1998) (court rejects husband's theory that because accounts receivable when collected become part of the husband's income upon which support is based, wife would receive double benefit if marital estate also was reimbursed for increase in accounts receivable); *In re Marriage of Lee*, 246 Ill. App. 3d 628 (1993) (court rejects husband's claim that trial court considered his "future income" twice, once in valuing the accounts receivable and again in determining the proportion of marital assets awarded each party, holding that accounts receivable are simply past, but not yet collected, income).

We agree with the appellate court in the preceding cases. Although accounts receivable have not been collected, they are assets that have been earned and have a known value and, thus, are distinguishable from future earnings or income-generating ability. Because accounts receivable have a known value, a court can properly consider accounts receivable as assets of the business. As the *Tietz* court correctly observed, accounts receivable are future income only in the sense that they will be collected in the future. Accounts receivable are not future income in the sense that they are assets considered by a circuit court in determining a party's income-generating ability for purposes of maintenance or child support awards. The fact that the accounts receivable may not be collected until a future date does not transform those assets into speculative or future income. Consequently, we agree with the appellate court that the circuit court should have considered the accounts receivable in valuing Earl's dental practice. We therefore affirm that portion of the appellate court's order remanding this cause to the circuit court for a redistribution of marital

property which includes accounts receivable, in addition to cash on hand, cash surrender value of life insurance, and loans due from officers.

Finally, Earl argues that if this court affirms the appellate court's holding that goodwill and/or accounts receivable should be included in valuing Earl's dental practice, this court must also order the circuit court to reassess the 67/33 allocation of marital assets. Earl contends that the addition of personal goodwill and accounts receivable would increase the marital estate by more than $300,000, resulting in an unjust allocation of assets if the 67/33 division is allowed to stand.

Section 503(d) of the Dissolution Act provides that the circuit court shall divide marital property in "just proportions." 750 ILCS 5/503(d) (West 2000). In order to divide the marital property in just proportions, the circuit court first must establish the value of the assets. *In re Marriage of Cutler*, 334 Ill. App. 3d 731, 736 (2002). Any conflicts in testimony concerning the valuation of assets must be resolved by the trier of fact. *In re Marriage of Stone*, 155 Ill. App. 3d 62, 70-71 (1987). Here, Earl's expert showed adjusted accounts receivable of $112,000, while Earl stated that the accounts receivable would amount to $89,000. Jodi's expert discounted the receivables to $78,550. Consequently, upon remand, the circuit court first must determine the proper value of the accounts receivable, then it must include the accounts receivable, cash on hand, cash surrender value of life insurance and the loans due from officers in the distribution of marital assets. Because the circuit court has not had an opportunity to reassess the allocation of marital assets in light of the redistribution, we will not at this point usurp the circuit court's discretion to determine whether the 67/33 allocation of assets remains a just allocation upon redistribution. Rather, we find that it is for the circuit court to determine whether the 67/33 alloca-

tion must be reassessed once the accounts receivable, cash on hand, cash surrender value of life insurance and loans due from officers are added to the marital estate.

We next consider the issues raised in Jodi's cross-appeal. Jodi argues that, if this court agrees that goodwill and/or accounts receivable were properly excluded from the valuation of Earl's dental practice, this court should find that the circuit court abused its discretion in failing to *sua sponte* declare Jodi's waiver of maintenance unconscionable. In the event that this court declines to include goodwill and/or accounts receivable in the valuation of the dental practice, Jodi asks this court to either enter an award of maintenance or remand to the circuit court for an award of maintenance.

Earl responds that Jodi should not be allowed to change her litigation position on appeal. Earl notes that Jodi elected to waive maintenance at trial in order to seek a disproportionate share of the marital assets. Based upon Jodi's waiver of maintenance, the circuit court did in fact award Jodi a disproportionate share of the marital assets. Jodi should not be allowed to retract her waiver of maintenance simply because the circuit court did not accept her valuation of the dental practice.

We agree with Earl. This court has held that the theory under which a case is tried in the trial court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review. *Daniels v. Anderson,* 162 Ill. 2d 47, 58 (1994). To allow a party to change his or her trial theory on review would weaken the adversarial process and the system of appellate jurisdiction, and could also prejudice the opposing party, who did not have an opportunity to respond to that theory in the trial court. *Daniels,* 162 Ill. 2d at 59. Here, Jodi elected to waive maintenance in order to request a disproportionate share of the marital assets. Nonetheless, Jodi now claims that

the division of assets was unconscionable because the valuation of the dental practice did not include personal goodwill. Jodi, however, cannot claim that she was unaware that personal goodwill would be excluded from the valuation because our decisions in *Zells* and *Talty* were well established at the time that Jodi elected to waive maintenance. In addition, although goodwill was not included in the valuation of the dental practice, the circuit court considered goodwill, as evinced by Earl's greater ability to acquire assets in the future, in awarding Jodi 67% of the marital assets and in setting the amount of child support. We will not allow Jodi to change her trial strategy on appeal and now seek maintenance simply because the circuit court did not accept her expert's valuation of Earl's dental practice.

In any event, the propriety of a maintenance award is within the discretion of the trial court and the court's decision will not be disturbed absent an abuse of discretion. *In re Marriage of Puls*, 268 Ill. App. 3d 882, 887 (1994). A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court. *Puls*, 268 Ill. App. 3d at 888. Moreover, the burden is on the party seeking reversal concerning maintenance to show an abuse of discretion. *Puls*, 268 Ill. App. 3d at 888. Given that Jodi waived maintenance in order to seek a disproportionate share of the assets, and did in fact receive a disproportionate share of the assets, we cannot say that the circuit court's failure to *sua sponte* reconsider Jodi's waiver of maintenance amounted to an abuse of discretion.

Finally, Jodi argues on cross-appeal that the circuit and appellate courts erred in denying her request for contribution of attorney fees and costs. Jodi claims that the circuit court abused its discretion because the evidence revealed a gross disparity in income and earning capacity, as well as Jodi's financial inability to pay her fees.

Earl contends that Jodi has failed to meet her burden of showing that the circuit court's finding was an abuse of discretion. Jodi failed to present any facts or argument with regard to the fee factors, including complexity, nature of the controversy, or importance of the subject matter. Jodi also failed to provide this court with a record reflecting the amount of Earl's fees, which is necessary to an analysis concerning an award of attorney fees. Earl argues that absent a finding that the dental practice was undervalued, the circuit court did not abuse its discretion in denying Jodi's request that Earl pay more than $67,000 for her attorney and expert fees, in addition to his own fees, out of the $161,000 that he received in the distribution of marital assets.

Section 508 of the Dissolution Act allows for an award of attorney fees where one party lacks the financial resources and the other party has the ability to pay. 750 ILCS 5/508 (West 2000). The party seeking an award of attorney fees must establish her inability to pay and the other spouse's ability to do so. *In re Marriage of Puls*, 268 Ill. App. 3d 882, 889 (1994). Financial inability exists where requiring payment of fees would strip that party of her means of support or undermine her financial stability. *Puls*, 268 Ill. App. 3d at 889. In addition, a trial court's decision to award or deny fees will be reversed only if the trial court abused its discretion. *In re Marriage of Snow*, 277 Ill. App. 3d 642, 653 (1996).

The appellate court affirmed the circuit court's order holding each party responsible for his and her own attorney fees and costs. The appellate court noted that the circuit court found both parties were equally unreasonable, litigious and quarrelsome throughout the proceedings, resulting in an unnecessarily expensive divorce. In addition, the circuit court had considered the factors set forth in section 503 of the Dissolution Act and found it was equitable to hold both parties responsible for their

own attorney fees. The appellate court further noted that Jodi had failed to show an inability to pay her own attorney fees. Finally, the appellate court reiterated that Jodi had been awarded a disproportionate share of the marital assets, amounting to approximately $326,000.

We agree with the appellate court that Jodi has failed to establish that the circuit court abused its discretion in this case. Jodi has not established her inability to pay or Earl's ability to do so. Jodi also has not established that requiring payment of fees would strip her of her means of support or would undermine her financial stability. Although Jodi claims she is entitled to fees because Earl's dental practice was worth $650,000, we note that Earl's greater earning capacity was taken into consideration in awarding Jodi a disproportionate share of the marital assets and in setting the amount of child support. Consequently, we affirm the circuit court's order directing each party to pay his or her own fees and costs.

For these reasons, we reverse the appellate court's judgment finding that the circuit court should have included personal goodwill in the valuation of Earl's dental practice. We affirm the appellate court's finding that the circuit court should have included accounts receivable, cash on hand, cash surrender value of life insurance policies and loans to officers in its valuation of the dental practice, and remand the cause to the circuit court for a redistribution including those assets. Finally, we affirm the judgment of the circuit and appellate courts directing that each party is responsible for his or her own attorney's fees and costs.

*Appellate court judgment affirmed*
*in part and reversed in part;*
*circuit court judgment affirmed*
*in part and reversed in part;*
*cause remanded with directions.*