2022 IL App (2d) 21-0099-U
No. 2-21-0099
Order filed June 7, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF DANA M. SANTI, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 17-D-647 |
| JAMES E. TOTH, | ) ) ) | Honorable Neal W. Cerne |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Regarding past-due maintenance, the trial court did not err in awarding the ex-wife $19,980.  However, it neglected to award statutorily mandated interest in the amount of $586.72.  Regarding the modified maintenance award, the trial court did not err in setting the ex-wife's annual gross income at $45,000.  Moreover, the wife forfeited her argument that the trial court applied the wrong formula in determining the modified maintenance amount.  Finally, as to attorney fees, the trial court did not err in denying the ex-wife's petition.  Affirmed as modified.

¶ 2    On January 27, 2021, the trial court entered a post-decree order reducing the amount of child support and maintenance to be paid by respondent-appellee, James E. Toth, to petitioner-appellant, Dana M. Santi, pursuant to section 510 of the Illinois Marriage and Dissolution of

Marriage Act (Act). 750 ILCS 5/510 (West 2020). The court also denied Dana's petition for attorney fees pursuant to section 508(a) of the Act. 750 ILCS 5/508(a) (West 2020). Dana appeals, accepting the reduced child support award but raising various claims of error in the trial court's past-due maintenance award, modified maintenance award, and denial of attorney fees. We affirm as modified the trial court's $19,980 award of past-due maintenance to include $586.72 in statutorily mandated interest. We affirm the trial court's decision to set Dana's income at $45,000 and find forfeited her argument that the trial court used the wrong formula in determining the modified maintenance award. We affirm the trial court's denial of attorney fees. We affirm as modified.

¶ 3                                    I. BACKGROUND

¶ 4      On May 30, 2018, the trial court entered a dissolution judgment, ending Dana and James's 23-year marriage. Dana was then age 45 and James was then age 46; the parties had two minor children, then ages 9 and 10. The dissolution judgment incorporated the parties' marital settlement agreement, which awarded each parent significant parenting time, with eight days for Dana and six days for James in each two-week cycle. Additionally, James was to pay Dana $1900 per month for child support and $6625 per month for maintenance.

¶ 5      Specifically, the dissolution judgment provided as to maintenance:

> "JAMES shall pay DANA maintenance which is modifiable, reviewable, and terminable (based on his base salary of $295,000 per calendar year and her imputed income of $45,000 per calendar year) in accordance with Sec. 504 Guidelines in the amount of $79,500 per year or $6625 per month."

¶ 6      The dissolution judgment provided as to any future modifications of maintenance:

"DANA is considered to have an imputed income of $45,000 per year for purposes of calculating Guideline Maintenance and thereafter also for purposes of any future modifications of maintenance and/or child support."

¶ 7 Each party, represented by counsel throughout the post-decree proceedings, filed numerous post-decree motions and petitions. Tangentially at issue here, in March 2020, James petitioned to terminate maintenance based on Dana's alleged cohabitation with another adult. Dana petitioned for attorney fees to defend against the motion. The other adult was merely Dana's female cousin visiting the Chicago area for a certain length of time. Ultimately, on July 8, 2020, the parties withdrew their respective petitions and the court entered an agreed order providing that all pending matters had been resolved.

¶ 8 On July 20, 2020, James filed the instant motion to modify child support and to temporarily suspend maintenance, alleging a substantial change in circumstances in that he lost his job.

¶ 9 On August 17, 2020, Dana filed the instant petition for attorney fees to defend against the motion. The petition incorrectly cited section 508(c) of the Act, which pertains to an attorney's petition for fees against his own client. See 750 ILCS 5/508(c) (West 2020). Later, on October 15, 2020, the trial court allowed Dana to amend the petition to cite to section 508(a), which allows for one party to divorce proceedings to seek attorney fees from the other party based on each party's respective financial resources. See 750 ILCS 5/508(a) (West 2020).

¶ 10 On January 6, 2021, the trial court conducted a hearing on James's motion to modify child support and temporarily suspend maintenance as well as Dana's petition for attorney fees. At the outset, Dana informed the court that she had also filed a petition for rule to show cause based on James's failure to pay the full maintenance amount during the pendency of his motion. Between July 20, 2020, and January 6, 2021, James had paid the full child support amount but only a portion

of the maintenance amount. Specifically, James gave Dana the entirety of his unemployment benefits, or approximately $2900 per month, with the amount due on the original maintenance order to January 1, 2021, being $19,980. The court stated that, to the extent the evidence allowed, it would address the $19,980 shortfall and James's alleged contempt.

¶ 11    James testified to his job loss and return to employment at a lower salary. At the time of the dissolution, James had worked for a company called VSA Partners. He earned a base salary of $295,000, and, during the years immediately preceding the hearing, he did not earn a bonus. In July 2020, financial strains brought on by the COVID-19 pandemic forced VSA to cut James's entire department. VSA and James entered into a severance agreement, in which James received $121,154, representing 20 weeks of his gross salary. James also applied for, and received, approximately 20 weeks of unemployment benefits to be paid every two weeks in the amount of $1338 every two weeks, or $2900 per month.

¶ 12    Between July and December 2020, James conducted an exhaustive job search, applying to nearly 100 jobs. James submitted a journal documenting the same. In mid-December 2020, a small marketing firm in Madison, Wisconsin, offered him a job. It was his only offer, and he decided to accept it. His new base salary was $105,000, with the possibility of a bonus. (The parties did not question James as to the nature of the bonus.) He was also offered health benefits. However, because the company was located in Wisconsin, those benefits were of limited practical value in Illinois. As a result, James negotiated for an additional $620 per month in taxable income, which could be used to pay for COBRA (health insurance under the Consolidated Omnibus Budget Reconciliation Act), an expense that was currently costing him $1495 per month.

¶ 13    James explained why he paid only a portion of his maintenance obligation during the pendency of his motion. He acknowledged that, due to the severance agreement, he effectively

received his full salary plus unemployment benefits through mid-December 2020. However, he also had increased expenses, such as the $1495 COBRA payment. Moreover, he was uncertain how long it would take him to find comparable employment. He testified:

"Q. Why did you reduce the amount of maintenance that you were paying to [Dana]?

A. Because I no longer had a job. I was very concerned and afraid that I wouldn't have enough money to make it through. I—Even with the money that they offered me, I was only—had enough money to make it to March [2021]. I had two very good friends go through the same situation, one about a year prior to me without having Covid in all of this.

***

A. *** And they both required over a year to find a position. I was an executive creative director and a partner. I'm part of a senior leadership team of the organization.

***

A. And I was very nervous that I would have to make things work for a full year. I have to pay for a home for my children and I have financial obligations. So I did the best I could with what I had."

¶ 14    As to the question of attorney fees, James testified that he had paid his own attorney approximately $7400 and owed another $1400 in conjunction with the instant proceedings.

¶ 15    Dana testified to her income and business. Dana owned a Pilates studio. In 2018, as reflected in a tax document, the total income from the business had been $222,435. However, she paid two instructors, who worked as independent contractors. She also paid herself as an employee. Certain complications made it difficult to calculate her exact personal income. For this reason, the parties agreed to set her personal income at $45,000 per year.

¶ 16    As recalled by the trial court: "And I do remember the reason they came to that was because it was difficult to determine what the income was.  I think she was just starting it, if I'm recollecting.  So, it was really more of a figure that instead of having to go through and audit all these books all the time, that they just came to that agreement.  That's how the number came about."  Still, the trial court contemplated aloud whether it would be "against social policy" to freeze Dana's income at $45,000 "for all eternity" for purposes of maintenance and/or child support.  It continued that it certainly *would* be against public policy to freeze Dana's income for purposes of child support.

¶ 17    Dana further testified that, since the COVID-19 pandemic, her business has been operating at about 10% capacity.  Dana estimated that her 2020 income was $23,000 per year, exclusive of child support and maintenance.  She reached this figure by adding two pay draws from her company in amounts of $5473 and $4500 as well as $12,000 to $14,000 in unemployment benefits.  Separately, she acknowledged receipt of a $25,000 small business loan.  She further acknowledged that, while her Pilates business maintains a $20,000 balance in its checking account, she purposefully declined to pay herself during November and December 2020 so as not to jeopardize her unemployment benefits.

¶ 18    As to the question of attorney fees, Dana testified that, in October 2020, she paid her attorney $10,000, which remains in the client trust account.  Dana had "no idea" how much she currently owed her attorney.

¶ 19    James's attorney argued in closing that Dana's 2020 income *was* approximately $45,000, just as the parties had agreed to impute upon Dana for the purposes of calculating any future modification of maintenance.  In support, he noted that Dana took out $10,000 to pay herself, sat

on another $20,000 in the business checking account from which she declined to pay herself, and accepted another $14,000 in unemployment benefits.

¶ 20    As to James's proposal for maintenance going forward, James submitted a form worksheet to the court that was accepted as a demonstrative exhibit.  At this juncture, we note that the worksheet, which was entitled "Illinois Maintenance Worksheet (eff. Jan. 1, 2019)," was consistent with the guidelines set forth in section 504(b-1)(1)(A), which pertains to initial maintenance awards entered after January 1, 2019, not, pursuant to section 504(b-1)(1)(A-1), which pertains to modifications of maintenance orders that were originally entered before January 1, 2019.  Compare 750 ILCS 5/504(b-1)(1)(A) (West 2020) with *id*. § 504(b-1)(1)(A-1).[1]  Application of the section 504(b-1)(1)(A) formula resulted in a guideline award of $798 per month.

---

[1] The current version of section 504, enacted by Public Act 100-923 § 10, and effective January 1, 2019, sets forth in section 504(b-1)(1)(A) the formula for calculating an initial maintenance award:

"(A) The amount of maintenance under this paragraph (1) shall be calculated by taking 33 1/3% of the payor's net annual income minus 25% of the payee's net annual income. The amount calculated as maintenance, however, when added to the net income of the payee, shall not result in the payee receiving an amount that is in excess of 40% of the combined net income of the parties."  750 ILCS 5/504(b-1)(1)(A) (West 2020).

Section 504(b-1)(1)(A-1), in turn, sets forth the formula for calculating a modification of maintenance, provided the existing maintenance award was entered prior to January 1, 2019:

"(A-1) Modification of maintenance orders entered before January 1, 2019[,] that are and continue to be eligible for inclusion in the gross income of the payee for federal

¶ 21    In response, Dana's attorney did not focus on the issue of maintenance going forward, seeming to rely on Dana's testimony that her business, like James's, suffered during the COVID-19 pandemic.  Instead, Dana's attorney focused on the $19,980 shortfall and attorney fees: "Going forward for 2021 with his new job, there should be a recalculation.  Nobody is saying there shouldn't be.  But for 2020, from the time he got that [severance and unemployment] money till now, he owes her $19,9[8]0.  He also owes her attorney fees."

¶ 22    On January 6, 2021, and January 27, 2021, the trial court issued the following oral and written rulings.  On the question of past-due maintenance, the trial court ruled in favor of Dana,

_____

income tax purposes and deductible by the payor shall be calculated by taking 30% of the payor's gross annual income minus 20% of the payee's gross annual income, unless both parties expressly provide otherwise in the modification order. The amount calculated as maintenance, however, when added to the gross income of the payee, may not result in the payee receiving an amount that is in excess of 40% of the combined gross income of the parties." 750 ILCS 5/504(b-1)(1)(A-1) (West 2020).

In Public Act 100-923, the legislature amended subsection (A), which had previously applied the same 30%-20% formula now set forth in subsection (A-1), "in response to a change in federal law that eliminated the deductibility of maintenance for federal tax purposes." See *In re Marriage of Wig*, 2020 IL App (2d) 190929 ¶¶ 8-9 (citing Pub. L. No. 115-97, 131 Stat. 2089 (2017) (repealing 26 U.S.C. § 71)).  However, the legislature also added subsection (A-1), which preserved the 30%-20% formula for modifications of existing maintenance orders that had been entered prior to January 1, 2019, and which continued to be eligible for deductibility of maintenance for federal tax purposes. *Id*.

stating: "[James is] going to owe that past maintenance, frankly, because I think the problem is his income hasn't changed [through January 1, 2021, due to the severance agreement]." Still, the court declined to find James in contempt for withholding a portion of the payment during the pendency of the motion. It explained: "I mean, he did lose his job. He was terminated. *** [H]e paid all of his child support amount and he paid, you know, a good portion of what was owed for the maintenance. [And,] to hold someone in contempt, you've got to show a complete disregard of the court order, not [just] that he didn't comply." The court's written order provided: "The amount that was not paid in 2020 is to be paid to Dana within 30 days of this order. As testified to, that amount is $19,980."

¶ 23    On the question of maintenance going forward, the trial court ruled in favor of James. The court reduced the maintenance award from $6625 to $800 per month, retroactive to January 1, 2021. It adopted the formula and figures set forth in the section 504(b-1)(1)(A) worksheet provided by James, rounding up the $798 figure to $800. It specified that it chose to enforce the provision in the judgment of dissolution that had set Dana's gross income at $45,000 for the purposes of determining future maintenance modifications.

¶ 24    The trial court denied Dana's petition for attorney fees. It explained: "I want to be clear that I denied the motion for contribution of fees because it would not leave [Dana] destitute, and I don't even know what the fees owed are. There's no evidence of what *** fees *** were incurred."

¶ 25    The trial court also reduced the child support award from $1900 to $680 per month. Though Dana does not challenge the reduction on appeal, the court's reasoning is relevant to her arguments concerning maintenance. In calculating child support, the court accepted Dana's net income as $18,996 (based on a gross income of $23,000, as had been urged by Dana). It explained that the provision in the judgment of dissolution that had set Dana's income at $45,000 for the

purposes of determining future child support modifications was unenforceable. Specifically, it provided:

> "9. For child support purposes, Dana's income has decreased.
>
> As stated above, Dana's income at the time of the [j]udgment, May 30, 2018, was $45,000.
>
> In March 2020, Dana's business, a [P]ilates studio, suffered a severe decrease in revenue due to the pandemic. She received some income from her business as well as unemployment. For 2020 she received a total of approximately $23,000 excluding child support and maintenance.
>
> Dana suffers from no disabilities that prevent her from being employed.
>
> Dana has not looked for new employment and appears to have a desire to continue her [P]ilates business.
>
> Dana has the same obligation as James to financially support the children. [Citation.]
>
> Dana has the ability to earn at least $23,000 from her [P]ilates business or from other employment (with the minimum wage at $10.00 per hour the annual wage would be $20,800)."

This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27    Dana challenges the trial court's (1) past-due maintenance award, (2) modified maintenance award, and (3) denial of her petition for attorney fees. The trial court's decisions concerning maintenance, as well as its decision to deny a petition for attorney fees, are reviewed for an abuse of discretion. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009) (maintenance); *In re Marriage*

*of Schneider*, 214 Ill. 2d 152, 174 (2005) (attorney fees). A trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable, or where it commits an error of law. *Blum*, 235 Ill. 2d at 36; *CitiMortgage, Inc. v. Johnson*, 2013 IL App (2d) 120719, ¶ 18 (error of law). Whether the trial court properly applied statutory requirements, in turn, is subject to *de novo* review. *In re Estate of Lower*, 365 Ill.App.3d 469, 478 (2006).

¶ 28                    A. Past Due Maintenance: July 20, 2020, to December 31, 2020

¶ 29    The trial court's award of past due maintenance covered the period from July 20, 2020, to December 30, 2020. The $19,980 figure awarded by the trial court represented the difference between the amount due under the dissolution judgment, $6625 per month, and the amount actually paid by James, $2900 per month, during that period. Dana argues that the trial court erred in the amount awarded, because it did not account for the unemployment benefits received by James during that same period, nor did it award mandatory statutory interest. For the reasons that follow, we find forfeited Dana's first argument, concerning the $19,980 principal, but agree with her second argument, concerning interest.

¶ 30    Dana has forfeited any claim concerning James's unemployment benefits for failure to raise the issue below. When a party fails to raise a claim before the trial court, that party forfeits consideration of the issue on appeal. *In re Marriage of Gabriel and Shamoun*, 2020 IL App (1st) 182710, ¶ 72. The rationale for finding the claim forfeited is to " 'ensur[e] both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction.' " *Id*. (quoting *1010 Lake Shore Association v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14). Here, Dana argued below that the amount due and owing under the dissolution judgment was $19,980, and that is the amount the trial court

awarded. Dana did not argue that the dissolution judgment also entitled her to a portion of James's unemployment benefits.

¶ 31    As to interest, Dana notes that section 504(b)(5) provides:

>    "(b)(5) Interest on maintenance. Any maintenance obligation *** that becomes due and remains unpaid *shall* accrue simple interest as set forth in Section 505 of this Act." (Emphasis added.)  750 ILCS 5/504(b)(5) (West 2020).

Dana argues that the word shall indicates that the trial court was required to award interest, and the court's silence on the matter was arbitrary and capricious.

¶ 32    James agrees that interest on past due maintenance accrues by operation of law. James calculates the amount of interest due pursuant to statute to be $586.72, and Dana does not dispute James's calculation. However, James then proceeds to argue that the trial court did, effectively, award interest such that no modification is necessary. James offers that, "rather than itemize the above-stated $586.72 interest with all the attendant algebraic machinations into its [o]rder, the trial *folded the interest into an award of maintenance* for Dana in excess of what Dana was entitled to receive for December 2020."  (Emphasis added.)  James explains that the severance payment, representing 20 weeks of James's salary at VSA, would end December 7, 2020, if James had rationed it out week by week. Therefore, in James's view, the trial court's statement that it would award Dana past-due maintenance through the end of 2020 because, effectively, James's income remained steady through the end of 2020 was not accurate.

¶ 33    James does not account for the unemployment benefits through mid-December 2020. That total amount, if condensed into the final three weeks of December, substantiated the trial court's view that James's income remained the same throughout 2020, or, at least, did not constitute a substantial change in circumstances justifying a modification of maintenance. In any event, the

record shows that the trial court did not fold its interest award into an award of maintenance. Rather, the trial court stated simply: "The amount that was not paid in 2020 is to be paid to Dana within 30 days of this order. As testified to, that amount is $19,980." The trial court's failure to award the $586.72 in interest that was due on that $19,980 amount was an oversight, not a conscious decision to forgo a precise calculation in favor of a folded accounting of interest. Accordingly, we affirm as modified the trial court's $19,980 award of past-due maintenance to include $586.72 in interest.

¶ 34                 B. Modified Maintenance Award: January 1, 2021, Forward

¶ 35    Dana argues that the trial court erred in issuing the modified maintenance award, challenging both its formula and its figures.

¶ 36                                 1. Formula

¶ 37    Dana argues that the trial court erred in failing to use the formula set forth in section 504(b-1)(1)(A-1). See 750 ILCS 5/504(b-1)(1)(A-1) (West 2020). James argues that Dana forfeited the argument, and we agree.

¶ 38    As to formula, Dana argues in total:

> "The January 27, 2021[,] [o]rder flies in the face of the statute which provides:
>
> > '(A-1) Modification of maintenance orders entered before January 1, 2019, that are and continue to be eligible for inclusion in the gross income of the payee for federal tax purposes and deductible by the payor shall be calculated by taking 30% of the payor's gross annual income minus 20% of the payee's gross income, unless both parties expressly provide otherwise in the modification order.' … when it used the wrong formula.

The court's order of January 27, 2021[,] is arbitrary and capricious for not using the above formula for taxable and deductible maintenance."

¶ 39   Initially, we note that Dana's argument is forfeited because she did not object to the formula worksheet that James submitted to the trial court. See, *e.g.*, *Shamoun*, 2020 IL App (1st) 182710, ¶ 72. The rationale for finding such claims forfeited is to " 'ensur[e] both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction.' " *Id.* (quoting *1010 Lake Shore*, 2015 IL 118372, ¶ 14). By staying silent, Dana allowed the trial court to fashion an award in accordance with the formula set forth in section (b-1)(1)(A), which applies to the initial setting of maintenance after January 1, 2019, and which uses net, rather than gross, income. She then allowed the trial court to fashion its child support award, which she does not appeal, using the $800 maintenance figure. Under these circumstances, forfeiture is appropriate.

¶ 40   Dana's argument is also forfeited pursuant to Supreme Court Rule 341(h)(7) (eff. October 1, 2020). Rule 341(h)(7) requires an appellant to develop his or her argument with citation to relevant authority. *Id.* This court is "entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented, and it is not a repository into which an appellant may foist the burden of argument and research." *Velocity Investments LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010). Failure to comply with Rule 341(h)(7) may result in forfeiture. *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 12 (plaintiff's argument, which consisted of two conclusory paragraphs, was forfeited for failure to comply with Rule 341(h)(7)).

¶ 41   Here, as in *Hall*, Dana's argument consists of but a few conclusory sentences. Dana has not provided the full citation to the statute upon which she relies, which we presume is 750 ILCS 5/504(b-1)(1)(A-1) (West 2020). Moreover, she has not provided the relevant statutory text in its

entirety. Dana omitted the next sentence in section 504(b-1)(1)(A-1), which provides that "[t]he amount calculated as maintenance, however, when added to the gross income of the payee, may not result in the payee receiving an amount that is in excess of 40% of the combined gross income of the parties." *Id*. Finally, and most significantly, Dana does not explain how or to what extent the maintenance calculation would differ had the trial court applied the formula set forth in section 504(b-1)(1)(A-1) instead of the section 504(b-1)(1)(A) formula used by the trial court with the acquiescence of the parties. Given the different tax treatments under each respective formula, *supra* n.1, it is not clear from Dana's undeveloped argument that use of the section 504(b-1)(1)(A-1) would have advantaged her. Even if the argument had been preserved below, it would be forfeited her pursuant to Rule 341(h)(7).

¶ 42                                        2. Figures

¶ 43    Dana also argues that, regardless of the formula used, the trial court erred in setting her income at $45,000 for the purposes of calculating the modified maintenance amount. Dana recognizes that parties to a marital settlement agreement may agree to make maintenance nonmodifiable and nonreviewable. *In re Marriage of Kozloff*, 101 Ill. 2d 526, 533-34 (1984). She appears to concede, as a logical corollary, that parties to a marital settlement agreement can agree to "lock in" an imputed income figure for the purposes of determining future maintenance modifications. Nevertheless, she notes that the trial court itself contemplated aloud whether the agreement was against social policy, and she argues that it was fundamentally unfair to recognize that the COVID-19 pandemic brought about a significant decrease in James's income but not in her income. She points to the trial court's use of the $23,000 figure in calculating child support to show that the trial court did recognize that Dana earned less than $45,000 in 2020 and that her

business suffered due to the COVID-19 pandemic. Essentially, Dana argues that the marital settlement agreement was unconscionable.

¶ 44    A marital settlement agreement is unconscionable if there is an absence of a meaningful choice on the part of one of the parties or if its terms are unreasonably favorable to the other party. *In re Marriage of Labuz*, 2016 IL App (3d) 140990, ¶ 37. Correspondingly, "[t]o determine whether an agreement is unconscionable, the court must consider two factors: (1) the circumstances and conditions under which the agreement was made; and (2) the economic circumstances of the parties that result from the agreement." *Id*. The first consideration addresses procedural unconscionability, and the second consideration addresses substantive unconscionability. See *id*. ¶ 38.

¶ 45    Dana's argument concerns the economic circumstances of the parties that resulted from the agreement and is, therefore, one of substantive unconscionability. The critical time period to consider when evaluating an allegation of substantive unconscionability is the period immediately following the execution of the agreement. *Wig*, 2020 IL App (2d) 190929, ¶ 19. The fact that an agreement merely favors one party does not make it substantively unconscionable. *Labuz*, 2016 IL App (3d) 1409990, ¶ 51. Rather, the terms of the agreement must be " 'so one-sided as to oppress or unfairly surprise an innocent party[.]' " *Id*. (quoting *In re Marriage of Tabassum*, 377 Ill. App. 3d 761, 777 (2007)). A substantively unconscionable agreement is one that " 'no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.' " *Id*. (quoting *In re Marriage of Richardson*, 237 Ill. App. 3d 1067, 1080 (1992)).

¶ 46    Here, it certainly cannot be said that the terms of the agreement resulted in economic circumstances that were unduly one-sided in favor of James immediately following the execution

of the agreement. Nor can it be said that the terms of the agreement resulted in economic circumstances that were unduly one-sided in favor of James years after the execution of the agreement such that enforcement of the agreement would be unconscionable. While both James's and Dana's income decreased significantly due to the COVID-19 pandemic, only James performed an exhaustive search for new employment. Dana's decision to continue her business rather than dissolve it and find new employment is to be respected, as is James's decision to accept a job below his previous executive-level employment in order to meet the basic needs of his dependents. Each party made a choice concerning their present employment, aware of its consequences under the existing agreement. That the trial court may have contemplated the conscionability of the agreement aloud during the course of the hearing did not preclude it from resolving the matter in favor of finding the agreement conscionable, and the evidence supports that determination.

¶ 47                                            C. Attorney Fees

¶ 48     Dana argues that the trial court erred in denying her petition for attorney fees. She cites to section 508(b) of the Act, which provides that a party to a divorce proceeding may be entitled to attorney fees incurred in seeking to enforce an order with which the other side, without compelling cause or justification, failed to comply. 750 ILCS 5/508(b) (West 2020). Dana recounts costs incurred in defending against not only the instant motion to modify, but also the previously withdrawn motion to terminate based on cohabitation and other, various, post-decree filings.

¶ 49     Dana's argument is misplaced. On July 8, 2020, the parties withdrew all pending post-decree motions, including James's motion to terminate maintenance based on cohabitation and Dana's motion for attorney fees to defend against the same. The deck was cleared. Dana's instant, August 17, 2020, petition for fees concerned only contribution for fees to defend against James's

July 20, 2020, motion to modify child support and temporarily suspend maintenance based on a substantial change in circumstances in that James lost his job.

¶ 50    Moreover, Dana's instant petition for attorney fees was filed pursuant to section 508(a) of the Act, not section 508(b). See 750 ILCS 5/508(a) (West 2020). The trial court made express note of this in allowing Dana to amend her petition to cite section 508(a) instead of 508(c). Section 508(a) of the Act provides that "[t]he court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees." *Id.* Section 508(a) allows the trial court to deviate, in appropriate circumstances, from the general rule that each party is responsible for his or her own fees. See, *e.g.*, *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 709 (2006). Specifically, the party seeking an award of attorney fees must establish his or her inability to pay and the other spouse's corresponding ability to pay. *Schneider*, 214 Ill. 2d at 174. The court should consider whether requiring the moving party to pay his or her own fees would undermine that party's means of support or financial stability. *Id.* Again, the court's decision to award or deny a petition for attorney fees is reviewed for an abuse of discretion. *Id.*

¶ 51    Here, it cannot be said that Dana met her burden to show her own inability to pay. Dana acknowledged that $10,000 sat in her attorney's client trust account to be used for the payment of fees incurred in her divorce proceedings. Dana did not submit a record or even an estimate of the fees associated with defending against the instant motion to modify child support and temporarily suspend maintenance. As the trial court stated: "I don't even know what the fees owed are. There's no evidence of what *** fees *** were incurred." The court did not abuse its discretion in denying Dana's petition for attorney fees.

¶ 52                                III. CONCLUSION

¶ 53    For the reasons stated, we affirm as modified the trial court's $19,980 award of past-due maintenance to include $586.72 in interest.  The maintenance modification order and the denial of attorney fees are affirmed.

¶ 54    Affirmed in part as modified.