# Illinois Official Reports

## Appellate Court

*In re Marriage of Sadovsky*, 2019 IL App (3d) 180204

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF TERI D. SADOVSKY, Petitioner-Appellant, and CLAUDE A. SADOVSKY, Respondent-Appellee. |
| District & No. | Third District<br>No. 3-18-0204 |
| Filed | December 3, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 07-D-1518; the Hon. David Garcia, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Pamela Davis Gorcowski, of Kavanagh, Grumley & Gorbold LLC, of Joliet, for appellant.<br><br>Gwendolyn J. Sterk, of Gwendolyn J. Sterk and the Family Law Group, P.C., of Orland Park, for appellee. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justices McDade and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1        Petitioner Teri D. Sadovsky appeals from an order of the circuit court granting respondent Claude A. Sadovsky's request to terminate maintenance pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/510 (West 2016)). The trial court determined that Claude's decision to retire from his job as an emergency room physician was made in good faith and reduced his maintenance obligation to zero. On appeal, Teri claims that (1) the trial court's decision to set maintenance at zero was an abuse of discretion because it failed to consider all the statutory factors and (2) a new trial is warranted based on numerous evidentiary errors. She also appeals the denial of her petition for contribution of attorney fees and costs. We find that the trial court abused its discretion in barring the use of a properly disclosed report, striking the testimony of Teri's expert witnesses, and refusing to allow Teri to testify as to her lifestyle during the marriage. We reverse and remand for a new trial on the petition to terminate maintenance and affirm the denial of the petition for fees and costs.

¶ 2                                        I. BACKGROUND

¶ 3        Claude and Teri married in May of 1982. In 2007, Teri filed a petition for dissolution of marriage, and judgment was entered in March 2009. At the time of the parties' divorce, Claude was employed as an emergency room physician. His yearly income for the three years before trial exceeded $275,000. Teri had a degree in finance but had not worked outside the home in 25 years. She left her job as an administrative assistant when the parties had their first child. After that, she stayed at home with their two children and was the primary caretaker. At the time of dissolution, both children were adults. In the dissolution judgment, the trial court found that the parties enjoyed a comfortable lifestyle and that Teri required $8000 per month in maintenance to maintain that standard of living. The court awarded Teri 58% of the total marital assets and awarded Claude 42%.

¶ 4        In April of 2011, Teri began full-time work as a paralegal. Claude then filed a motion to reduce maintenance. The trial court granted the motion and reduced his maintenance to $6500 per month.

¶ 5        In November 2014, Claude filed a petition to terminate maintenance, in which he alleged that by virtue of his profession as an emergency room doctor he suffered extreme stress and that he intended to end his employment on December 20, 2014. He requested that his maintenance obligation be terminated or, in the alternative, reduced.

¶ 6        In 2017, shortly before trial, both parties filed financial affidavits with the court. Teri's financial affidavit stated that her gross yearly income was $39,225. She listed her net monthly income as $2150 and total monthly living expenses as $7698. She did not list any outstanding debts. Claude also filed a financial affidavit in which he listed his earned income for 2017 as $0 and his gross monthly income from retirement accounts and rental income as $2212. He reported a net monthly income of $2128 and monthly living expenses of $6594. His affidavit included a list of bank and credit card debts totaling $4000.

¶ 7        At trial, Claude testified that he began working as an emergency room doctor in 1985 and had worked at various hospitals throughout his career. At age 57, he decided to retire because he did not enjoy working anymore. Claude stated that he felt stress on the job because he had

been sued for medical malpractice several times. In late 2011, the hospital contracted with a new physician's group, and Claude was subject to patient evaluations. He scored poorly on the evaluations.

¶ 8    Beginning in 2011, Claude suffered physical symptoms resulting from the stress and anxiety of his job, including abdominal discomfort, irritable bowel, diarrhea, and visual abnormalities. He did not seek immediate treatment for his condition. He tried to relieve the stress through over-the-counter medications and exercise. He also tried to change his shifts and work at other company-owned hospitals. Although he was aware that taking anxiety medications could reduce the physical symptoms of stress, he resisted taking them because he believed they would compromise his ability to practice medicine.

¶ 9    In the fall of 2011, Claude started working as a full-time emergency room physician in Mattoon, Illinois, where he worked until the end of 2014. From January 2014 to August 2014, he worked at another hospital in Belleville that allowed compressed shifts. In the fall of 2014, Claude began making more mistakes. Between July and November 2014, Claude had four malpractice complaints made against him. Finally, in December 2014, he retired. Shortly after he retired, his physical symptoms relating to anxiety subsided. He stated that he stopped making monthly maintenance payments on December 31, 2014.

¶ 10    Claude testified that, as of July 2017, he had a retirement account worth $1,207,000. He also had a security benefit annuity with a cash value of $295,238, and a nonretirement investment account worth $286,592. In addition, he owned three properties in Hawaii; one is his residence, valued at $535,000, and two are rental properties. His net assets listed on his 2017 financial disclosure totaled $1,870,433.

¶ 11    From 2012 to 2014, Claude was the sole member of an S corporation. The corporation made deposits into Claude's retirement account and then paid his salary. An offer of proof showed that the corporation had total receipts in 2013 of $915,024 and had no employees except Claude. In 2014, the gross receipts of the S corporation totaled $867,276. The corporation was dissolved near the end of 2014. Claude objected to the evidence based on relevance, and the trial court granted his request, refusing to consider the corporate tax returns from 2012 through 2014.

¶ 12    Teri testified that she was not working outside of the home at the time of the divorce but began working as a paralegal for a law firm in 2011. Her gross income in 2016 was $39,225. Her employer does not pay for health insurance. According to Teri's 2017 financial affidavit, her gross assets are worth $1,616,887, which includes the marital residence valued at $285,000. Most of her assets are retirement benefits and deferred compensation accounts. She does not withdraw any money from any of her retirement accounts to pay living expenses because she would be penalized for early withdrawals. Her 2017 financial affidavit also disclosed a bank account with a balance of $162,261. She testified that she uses the funds in that account to help pay her medical insurance and living expenses. Teri stated that her earnings alone do not allow her to maintain and sustain herself. When Teri was asked by her counsel to describe the standard of living she had enjoyed during the last 15 years of her marriage, Claude objected, and the trial court sustained the objection.

¶ 13    Dr. Kevin Klauer, an expert witness for Claude, testified that emergency medicine doctors have the highest level of burnout in the medical profession. He stated that not many doctors stay in the specialty of emergency medicine after the age of 55. He noted that a doctor having four malpractice claims in five months is a concerning trend. Klauer testified that it was

reasonable for Claude to step down from emergency room medicine after 32 years, given the malpractice history and the mistakes he was making.

¶ 14 Dr. Elbert Lee, a psychiatrist at Sarah Bush Lincoln Hospital, testified that he first saw Claude as a patient in October of 2014. Claude sought his help due to worsening anxiety, depressive symptoms, and stressors at work. Lee explained that Claude felt an undue amount of stress at work and was physically and mentally worn out. He diagnosed Claude as having generalized anxiety disorder, not otherwise specified, and recommended that Claude retire.

¶ 15 Dr. Doris Van Byssum, a licensed clinical psychologist, testified as an expert for Teri. She interviewed Claude over Skype on September 30, 2016, and administered a test by asking questions. She also reviewed Dr. Lee's records. At trial, Van Byssum concluded that Claude was not suffering from any mental health issues. She admitted that the stressors that existed in 2014 were not present in 2016 when she conducted her interview. Teri's counsel then asked Van Byssum whether, "within a reasonable degree of medical certainty," she found any psychiatric basis that prevented Claude from returning to work. Claude objected, arguing that Van Byssum's disclosed report did not express an opinion in terms of a "reasonable degree of medical certainty." The trial court sustained the objection and barred Van Byssum's testimony.

¶ 16 Teri attempted to present another expert, Dr. Jack Franaszek, a board-certified emergency physician and the director of immediate care at Northwestern Medical Group. Franaszek had been asked to review documents pertaining to Claude's voluntary retirement and provide a report on the multiple employment opportunities available for emergency room physicians in his position. During discovery, a copy of Franaszek's six-page report was sent to Claude's attorney. In his report, Franaszek discussed the circumstances under which a physician might experience burnout. He also discussed several options of lower stress employment for emergency room physicians. At trial, Teri attempted to elicit testimony from Franaszek, using an edited version of the report. Claude objected to the report's admission and Franaszek's testimony regarding other sources of employment. The trial court found that the use of the edited report was a discovery violation under Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) and struck the report, as well as any testimony referencing it.

¶ 17 At the conclusion of trial, the court found that Claude left his employment as an emergency room physician in good faith. It rejected Teri's position that Claude had the ability to pay maintenance with his existing assets and entered an order abating Claude's maintenance obligation as of December 31, 2014. The order set maintenance at zero and stated that Teri could revisit the issue in the event Claude returned to work or had earned income.

¶ 18 Both parties filed petitions for attorney fees and costs. Following trial, the court held a brief hearing on the petitions. Teri alleged that she had incurred fees and costs totaling $83,467 and requested contribution from Claude under sections 508(a) and 503(j) of the Marriage Act (750 ILCS 5/508(a), 503(j) (West 2016)). Claude requested fees and costs as a sanction for Dr. Franaszek's report, pursuant to section 508(b) of the Marriage Act (750 ILCS 5/508(b) (West 2016)). The trial court found that both parties had sufficient assets to pay their own fees and denied their petitions.

## II. ANALYSIS

### A. Petition to Terminate Maintenance

Teri argues that the trial court erred in setting maintenance at zero. Initially, we note that Teri does not challenge the trial court's finding that Claude's decision to retire as an emergency room physician was made in good faith, and we find no error in that determination. A party who voluntarily changes employment, resulting in a reduced income, and seeks to modify a support obligation must show the employment change was made in good faith. See *In re Marriage of Blume*, 2016 IL App (3d) 140276, ¶¶ 29-31; see also *In re Marriage of Webber*, 191 Ill. App. 3d 327, 330 (1989) (respondent's good-faith decision to reduce his hours of employment in order to return to school justified modification of support order to reduce his payment). Claude met that burden. The evidence showed that his retirement was necessitated not by a desire to evade spousal support, but by a need to reduce his physical and mental symptoms of stress and anxiety.

Having made that determination, however, the trial court was then required to evaluate the factors in sections 504(a) and 510(a-5) of the Marriage Act to determine the appropriate maintenance modification. See 750 ILCS 5/504(a), 510(a-5) (West 2016). On appeal, Teri contends that the court failed to consider those statutory factors at trial and made numerous evidentiary errors that entitle her to a new trial. We will address her claim regarding evidentiary errors first because we find that issue dispositive.

### 1. Evidentiary Errors

The trial court's admission of evidence will not be overturned absent an abuse of discretion. *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 98 (2008). An abuse of discretion occurs when no reasonable person would rule as the trial court did. *Id.* Generally, a party is not entitled to reversal based on evidentiary rulings unless the error is substantially prejudicial and affects the outcome of the case. *Bosco v. Janowitz*, 388 Ill. App. 3d 450, 462-63 (2009). Although a single error may not warrant reversal, several evidentiary errors may require a new trial. *Netto v. Goldenberg*, 266 Ill. App. 3d 174, 184 (1994). A new trial is necessary when the cumulative effect of trial errors so deprives a party of a fair trial that the verdict might have been affected. *Id.*

### a. S Corporation Tax Returns

The first evidentiary ruling Teri challenges is the trial court's refusal to consider Claude's S corporation tax returns from 2012 to 2014.

Courts do not abuse their discretion in refusing to admit tax returns that are not relevant to the court's valuation of the parties' assets. See *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 65. Here, the record reveals that Claude's S corporation was dissolved in 2014 and was no longer an asset. Any evidence regarding Claude's salary from the corporation was irrelevant to the change in circumstances alleged in December 2014 or to Claude's financial standing at the time of trial in 2017. Accordingly, the trial court did not abuse its discretion by excluding the S corporation tax returns from those years.

¶ 28                                    b. Report on Employment Options

¶ 29        Next, Teri claims that the trial court erred in striking Dr. Franaszek's report and barring his testimony regarding Claude's available employment options.

¶ 30        Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) requires parties to provide the subject matter, conclusions, and opinions of controlled experts who testify at trial. *Lopez v. Northwestern Memorial Hospital*, 375 Ill. App. 3d 637, 645 (2007). Specifically, Rule 213(f) provides:

> "Upon written interrogatory, a party must furnish the identities and addresses of witnesses who will testify at trial and must provide the following information:
>
> * * *
>
> (3) Controlled Expert Witnesses. A 'controlled expert witness' is a person giving expert testimony who is the party, the party's current employee, or the party's retained expert. For each controlled expert witness, the party must identify: (i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case." Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2007).

The information disclosed in answer to a Rule 213(f) interrogatory limits the testimony that can be given by a witness on direct examination at trial. Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2007). It is improper for a trial court to allow previously undisclosed opinions. *Lopez*, 375 Ill. App. 3d at 645.

¶ 31        Prior to trial, Teri's attorney disclosed a report by Franaszek that evaluated Claude's employment as an emergency room doctor and discussed other employment opportunities available to Claude, including academic research and urgent care facilities. At trial, however, Teri's attorney attempted to use an edited report in questioning Franaszek and discussing his opinions. Claude objected, and the trial court barred the admission of the report.

¶ 32        We hold that, contrary to Claude's objection, Teri did not seek to introduce any previously undisclosed opinion. During discussions at trial and at oral argument on appeal, both parties agreed that the substance of the two reports was the same but that the paragraphs had been reorganized and the sections setting forth the expert witness's opinions had been renamed. Our review of the reports further indicates that the subject matter and conclusions of the report tendered at trial were the same subject matter and conclusions that were provided in Teri's Rule 213 disclosure. Consequently, the trial court exceeded its discretion by excluding the report tendered at trial based on a discovery violation.

¶ 33                                    c. Testimony on Employment Options

¶ 34        We also conclude that the trial court abused its discretion in striking Dr. Franaszek's testimony regarding Claude's employment options.

¶ 35        Rule 219(c) authorizes the trial court to prescribe sanctions, including barring witnesses from testifying, when a party fails to comply with discovery rules. Ill. S. Ct. R. 219(c)(iv) (eff. July 1, 2002); *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 620 (2007). The imposition of sanctions is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Nedzvekas*, 374 Ill. App. 3d at 620-21. In determining whether the trial court abused its discretion in fashioning a sanction, the reviewing court should consider (1) the surprise to the adverse party, (2) the prejudicial effect of the witness's testimony, (3) the nature of the

testimony, (4) the diligence of the adverse party, (5) the timeliness of the objection, and (6) the good faith of the party seeking to offer the testimony. *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314 (1993). No single factor is determinative, and each case must be considered based on its unique facts. *Nedzvekas*, 374 Ill. App. 3d at 621.

¶ 36     Disqualification of an expert is not the only sanction available when a party violates Rule 213. *Marshall v. Osborn*, 213 Ill. App. 3d 134, 141 (1991). Barring a witness's testimony is a drastic sanction and should be exercised with caution. *McGovern v. Kaneshiro*, 337 Ill. App. 3d 24, 37 (2003). Where a party has acted in good faith and has not engaged in abusive discovery practices, it is an abuse of discretion for the trial court to bar expert testimony that is not properly disclosed. See *Vallejo v. Mercado*, 220 Ill. App. 3d 1, 10 (1991).

¶ 37     At trial, the court sustained objections to Franaszek's testimony regarding other forms of employment available to Claude, based on Teri's Rule 213 discovery violation. As we have determined, however, the decision to exclude Franaszek's report as a sanction for violating Rule 213 was an abuse of discretion. That report established that Franaszek was being offered as an expert to testify as to job opportunities for emergency room physicians who no longer wished to practice emergency room medicine. In his report, Franaszek discussed the circumstances under which a physician might experience burnout. He reported that he had worked with emergency room physicians experiencing high levels of stress for over 35 years. In addition, he had hired emergency room physicians and reviewed malpractice claims against them. In his role as medical director for immediate care for Northwestern Medical Group, he had asked physicians under stress to reduce their hours or he had assigned them to an urgent care area. He had also recommended alternative employment for emergency room physicians in search of less stressful positions, such as telemedicine and research programs.

¶ 38     At trial, Franaszek testified that he has personally hired internists and family physicians. He has also hired administrative personnel, such as quality assurance coordinators and schedulers. He then attempted to testify regarding whether Claude could engage in lower stress employment as an option to emergency room medicine, but his testimony was barred. Since his testimony was substantially based on the report, we hold that the trial court abused its discretion in barring it.

¶ 39     Even if the report had not been properly disclosed, a review of the applicable *Martin* factors shows that the trial court abused its discretion in disallowing Franaszek's testimony. First, Franaszek's testimony was not a surprise to Claude. The nature of his opinions and conclusions were set forth in other pretrial disclosures, and Teri's entire pretrial strategy was aimed at establishing Claude's ability to continue to work in another medical position. Second, the prejudice Teri suffered by the trial court's ruling was significant where the expert was barred from expressing any opinion as to alternative means of employment. The primary issue at trial was whether Claude had the ability to pay maintenance. In determining a spouse's ability to pay, a trial court is required to consider whether there is a difference between the paying spouse's actual and potential income as a result of a voluntary retirement or change in employment status. See *In re Marriage of Lichtenauer*, 408 Ill. App. 3d 1075, 1088 (2011) (ability to pay maintenance involves assessment of spouse's ability, not merely the level at which spouse is willing to work). Third, the nature of the testimony was highly relevant. During Franaszek's testimony, the court sustained objections to questions regarding the average pay for an urgent care physician as speculative and irrelevant. The court also sustained objections to questions regarding whether Claude was a candidate to teach, to work in an

administrative field, or to conduct research. However, Franaszek's opinions on the subject were relevant and spoke directly to Teri's contention that Claude had the ability to continue to pay maintenance. Fourth, and finally, Teri did not commit any abusive discovery practice and offered Franaszek's testimony in good faith. Thus, all of the applicable factors favored Teri. The trial court's decision to fashion a sanction that effectively barred Franaszek from testifying was an abuse of discretion.

¶ 40                    d. Psychological Basis That Prevented Working

¶ 41    Next, Terri claims that the trial court erred in barring Dr. Van Byssum's testimony as to whether "within a reasonable degree of medical certainty" she found any psychological basis that prevented Claude from returning to work.

¶ 42    Witnesses are allowed to elaborate or give logical corollaries to Rule 213 disclosures. *Spaetzel v. Dillon*, 393 Ill. App. 3d 806, 813 (2009). Elaborating on a disclosed opinion does not automatically violate Rule 213, where the testimony states reasonable assessments of the opinion rather than new reasons for it. *Barton v. Chicago & North Western Transportation Co.*, 325 Ill. App. 3d 1005, 1039 (2001). While questions to an expert are frequently couched in terms of "reasonable certainty," courts have not mandated that phraseology. See Michael H. Graham, Handbook of Illinois Evidence § 702.1, at 762 (2019 ed.). The failure to employ such terminology is of no consequence when the opinion of a qualified expert reveals that it is based on recognized medical thought. *Id.*

¶ 43    Here, the trial court erred by again barring the witness's testimony. Counsel's decision to include the phraseology of "within a reasonable degree of medical certainty" did not rise to the level of a sanctionable discovery violation. Van Byssum's Rule 213 report stated that there was "no identifiable reason that [Claude] cannot return to work or that he could not have worked over the last two years." At trial, Teri's counsel asked Van Byssum to express her opinion "within a reasonable degree of medical certainty." Counsel's question did not add a new reason for the opinion. The language utilized merely elaborated on the disclosed opinion, and Van Byssum should have been allowed to answer the question.

¶ 44                    e. Testimony About Lifestyle During Marriage

¶ 45    Last, Teri argues that the trial court abused its discretion in barring her testimony regarding her lifestyle during the marriage. We agree.

¶ 46    In evaluating whether to modify or terminate maintenance, the court must consider the statutory factors in section 504(a) of the Marriage Act. *Blume*, 2016 IL App (3d) 140276, ¶ 37. One of the factors enumerated in the statute is the standard of living enjoyed during the marriage. 750 ILCS 5/504(a)(7) (West 2016); see also *In re Marriage of Heroy*, 2017 IL 120205, ¶ 27.

¶ 47    During trial on the petition to terminate maintenance, the trial court sustained an objection to counsel's question asking Teri to describe the standard of living during the last 15 years of marriage as irrelevant. An offer of proof established that during the marriage, the parties traveled extensively, had an affluent lifestyle, purchased real estate, always had new cars, built two homes, and regularly engaged in expensive activities. Any refusal to consider the parties' standard of living before or after dissolution is in direct contravention of the statutory guidelines. 750 ILCS 5/504(a)(7) (West 2016). The trial court's decision to bar Teri from

testifying about her lifestyle during the marriage was error.

¶ 48                                    f. New Trial

¶ 49        Based on an evaluation of the trial proceedings, we find that a new trial is warranted:

> "While a trial judge may have difficulty realizing the cumulative effect of numerous trial errors, a court of review does not labor under the same handicap. As a court of review, we sit in an ideal position to view the totality of trial errors. At some point the cumulative effect of the trial errors and imperfections become reversible error." *Twait v. Olson*, 104 Ill. App. 3d 191, 200 (1982) (Heiple, J., dissenting).

This case exemplifies that principle. Taken together, the numerous evidentiary errors were substantially prejudicial to Teri and affected the trial court's ultimate decision to set maintenance at zero. She should be given another opportunity to present her case. See *Netto*, 266 Ill. App. 3d at 184 (new trial is necessary where party's right to a fair trial is compromised based on numerous erroneous rulings). We therefore remand this case for a new trial on the petition to terminate maintenance.

¶ 50                      2. Failure to Consider Statutory Factors

¶ 51        Because we conclude that the trial court's evidentiary errors affected its decision to set maintenance at zero and require a new trial, we need not address Teri's alternative request for a new trial based on the court's failure to consider the relevant statutory factors. On remand, we direct the trial court to consider the admissible evidence, as discussed, and to evaluate all the factors under sections 504(a) and 510 in deciding an appropriate amount.

¶ 52                   B. Petition to Contribute Attorney Fees and Costs

¶ 53        Teri also argues that the trial court erred in denying her petition to contribute attorney fees and costs. She claims that Claude caused her to incur substantial attorney fees by seeking to terminate maintenance and that he should be responsible for those expenses based on the disparity in assets between the parties.

¶ 54        The primary obligation for the payment of attorney fees rests on the party on whose behalf the services were rendered. *In re Marriage of Mantei*, 222 Ill. App. 3d 933, 941 (1991). Section 508 of the Marriage Act allows the trial court to order a party to contribute a reasonable amount of the opposing party's fees where one party lacks the financial resources and the other party has the ability to pay. 750 ILCS 5/508(a) (West 2016). A contribution award is based on the criteria for the division of marital property and, where maintenance has been awarded, the criteria for an award of maintenance. 750 ILCS 5/503(j)(2) (West 2016). The criteria include (1) the property awarded to each spouse, (2) their incomes and present and future earning capacities, and (3) "any other factor that the court expressly finds to be just and equitable." See 750 ILCS 5/503(d), 504(a) (West 2016). The spouse seeking the contribution must establish his or her inability to pay and the other spouse's ability to pay. *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005). A trial court's decision to deny fees will be reversed only if the trial court abused its discretion. *In re Marriage of Snow*, 277 Ill. App. 3d 642, 653 (1996).

¶ 55        Here, Teri failed to demonstrate an inability to pay her own fees above and beyond Claude's ability to pay. The parties' financial affidavits indicate that, at the time of trial, Teri

had assets worth approximately $1.6 million, and Claude had assets worth well over $1.9 million. At the hearing on the petition, Teri indicated that she would need to divest capital assets if she was required to pay all the fees she incurred in the dissolution proceedings; however, she failed to establish that doing so would undermine her financial stability. The trial court's finding that both parties had the ability to pay their own attorney fees was not an abuse of discretion. Our decision today is based on the petition for fees that was before the trial court. It is not determinative of the payment of future fees, if any.

¶ 56                                    III. CONCLUSION

¶ 57        The order of the circuit court of Will County reducing maintenance to zero is reversed, and the cause is remanded for a new trial; the order denying the petition for contribution of attorney fees and costs is affirmed.

¶ 58        Affirmed in part and reversed in part.

¶ 59        Cause remanded.